# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-19-00730-CV

---

**Jocelyn Lehman, Appellant**

**v.**

**James Lehman and Jo Ann Lehman, Appellees**

---

**FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
NO. 18-0247-F425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Pro se appellant Jocelyn Lehman appeals from the trial court's order appointing her parents, appellees James Lehman and Jo Ann Lehman, as sole managing conservators for her daughter W.L.[1] Jocelyn was appointed possessory conservator and granted visitation under a "step-up" schedule that included drug-testing requirements. We affirm the trial court's order.

## BACKGROUND

W.L. was born in January 2014 to Jocelyn and Reinhard Hutchinson, who is not part of this appeal. In early 2018, appellees filed a petition in a suit affecting the parent-child relationship (SAPCR), seeking conservatorship of W.L. They attached an affidavit by James in which he averred that he had "extreme concerns and fears" for W.L.'s well-being due to

---

[1] Because the parties share a surname, we will refer to them by their first names. We will refer to the child by her initials.

Jocelyn's volatile relationship with Hutchinson, her abuse of alcohol, James's belief "that she is now also abusing drugs," and Jocelyn's "mean-spirited punishment and treatment" of W.L. James explained that when Hutchinson was released from prison in late 2016, Jocelyn, who had been doing well, "began drinking heavily and staying out all night again," started to be impatient with W.L. and to use overly harsh discipline, and sold some of W.L.'s toys and shoes "to get money." In the fall of 2017, appellees moved to Nevada. They realized that Jocelyn was spending time with Hutchinson again and believed that her behavior was becoming unreliable, and in early January 2018, they noticed she had "lost a considerable amount of weight," making them "suspicious again of drug use." Jocelyn "flew into a rage" when appellees asked to keep W.L. with them in Nevada, accused James of being abusive, and cut off contact between appellees and W.L. James averred that he and Jo Ann were concerned because of Jocelyn's expressed wishes "to be free of the responsibilities of parenting," her neglect of W.L. in favor of Hutchinson, her exposing W.L. to "whatever is there" in Hutchinson's hotel room, and her "history of drinking to excess and passing out." Jocelyn filed a counterpetition asking to be appointed sole managing conservator, for appellees to be granted scheduled visitation, and for Hutchinson to be appointed possessory conservator.

The trial court held a hearing on temporary orders in March 2018 and determined that appellees had not established that W.L. should be removed from Jocelyn's care. In May, the court signed temporary orders appointing Jocelyn as sole managing conservator, appointing appellees as possessory conservators, granting appellees visitation rights, ordering Jocelyn to continue with therapy, ordering Jocelyn and appellees to engage in family therapy, enjoining Jocelyn from having any contact with Hutchinson, and providing that W.L. "shall have no contact with Reinhard Hutchinson."

In September 2018, appellees filed a motion for temporary orders, attaching an affidavit by James stating that he and Jo Ann received a call from Child Protective Services (CPS) saying that W.L. had been "found during a drug raid at her father's house." In the raid, the police found "a backpack full of methamphetamine, heroin, cocaine, and MDMA." They also found methamphetamine in W.L.'s bedroom closet and on the master bedroom nightstand. Hutchinson was arrested, and Jocelyn tested positive for methamphetamine use. On September 20, 2018, the parties filed a Rule 11 Agreement, which provided that appellees should be named temporary sole managing conservators and have possession of W.L. until further order of the trial court, that Jocelyn should have supervised visitation "as agreed upon by the parties," and that Hutchinson should not have possession of the child.

In February 2019, Jocelyn filed a motion for further temporary orders, attaching her own affidavit averring that James was an alcoholic; that he had been abusive to her and her siblings; that he was being investigated for child abuse and sexual assault of a child; that he had grown "obsessive" about W.L.; that W.L. had shown indications of possible sexual abuse; and that he had threatened to kill her during a fight over custody of W.L. She denied being a regular drug user, although she admitted to using drugs during one weekend that W.L. was not with her. In June 2019, Jocelyn also filed a motion to dismiss appellees' petition, arguing that they lacked standing to file the suit.

After holding a final hearing, the trial court signed its SAPCR order in October 2019, finding that appellees had standing under the family code, *see* Tex. Fam. Code §§ 102.003(a)(9), .004(a)(1), .004(a)(2); that appellees should be appointed sole managing conservators; that Jocelyn should be appointed possessory conservator; that Jocelyn should have visitation under a "step-up" schedule, starting with supervised visitation and ending with

visitation pursuant to the Standard Possession Schedule, *see id.* §§ 153.312, .313; and that Hutchinson should not be allowed to have possession of or contact with W.L. Jocelyn's visitations were made contingent on her passing drug tests as set out in the order, engaging in therapy, and not allowing Hutchinson to have any contact with W.L.

## DISCUSSION

On appeal, Jocelyn argues that the trial court did not make W.L.'s best interest its primary consideration or apply the correct factors in making its determination of best interest, that it should have dismissed appellees' petition for lack of standing, that it erred in incorporating the parties' Rule 11 agreement into the final judgment, that it erred in appointing appellees as sole managing conservators, and that the final judgment violated her constitutional rights.

The SAPCR order states that the final hearing was held on "July 9 and 10, 2019, and September 10, 2019," and the master index for the reporter's record states that "only portions of the 09/10/2019 hearing [have] been requested by appellant." The filed reporter's record consists of portions of Jocelyn's and James's testimony from September 10;[2] appellees' Exhibit 4, which was introduced into evidence at the final hearing;[3] and the transcript from the March 23, 2018 hearing on temporary orders. The record does not indicate how many other

---

[2] The reporter's record states, "Requested Portion Begins 2:13pm," and starts with a question by Jocelyn's attorney about the last time Jocelyn saw Hutchinson, rather than introductory information that usually denotes the beginning of a witness's testimony. The record also includes James's "direct" examination by Jocelyn's attorney and his "cross-examination" by his own attorney. The record ends after James's attorney states, "Pass the witness, Your Honor," and it is unclear whether he was questioned further by Jocelyn's attorney.

[3] Exhibit 4 is an audio recording of a phone call between Jocelyn and Jo Ann. It is not clear when the recording was made, but W.L. was with appellees at the time. In the recording, Jocelyn stated that appellees were causing a "separation in our family" and would end up not being allowed to see W.L. She insisted that she was not using drugs and that appellees were "being lied to" and told things that did not happen. She also said that she had a new attorney and that "everything has changed."

4

witnesses testified or what they said, but in the portion of the reporter's record provided, the parties referred to other testimony from the hearing by Jocelyn's brother and by a CPS employee, as well as to exhibits introduced into evidence but not included in the appellate record.

An appellant may request a partial reporter's record under the rules of appellate procedure. *See* Tex. R. App. P. 34.6(c). However, in doing so, "the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues." *Id*. R. 34.6(c)(1). The other parties may designate additional portions to be included in the reporter's record, and those additions will be taxed to the appellant unless the trial court finds that all or part of the additions are unnecessary to the appeal, in which case the trial court may order the requesting party to pay those costs. *Id*. R. 34.6(c)(2), (3). If the appellant complies with rule 34.6(c), the appellate court "must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues," even if "the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in that point or issue." *Id*. R. 34.6(c)(4). However, if the appellant does not comply with rule 34.6(c), "we must presume the opposite: that the record's missing portions are relevant and that they support the trial court's judgment." *Stonegate Fin. Corp. v. Broughton Maint. Ass'n, Inc.*, No. 02-18-00091-CV, 2019 WL 3436616, at *4 (Tex. App.—Fort Worth July 30, 2019, no pet.) (mem. op.).

Our supreme court has explained that the courts should take a somewhat "flexible approach" in applying rule 34.6, in an effort to avoid denying "review on the merits, even though the appellee has not established any prejudice from a slight relaxation of the rule." *Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002). "However, litigants should not view our relaxation of rules in a particular case as endorsing noncompliance. While we seek to resolve appeals on

5

their merits, litigants who ignore our rules do so at the risk of forfeiting appellate relief." *Id*. at 230. "There is no question that" if an appellant "completely fail[s]" to file a statement of issues, rule 34.6 "require[s] the appellate court to affirm the trial court's judgment." *Id*. at 229.

In response to *Bennett*, appellate courts have held that an appellant may satisfy rule 34.6(c) by stating its intended issues in some form other than a formal designation of appellate issues, so long as it provided "a discrete statement of the issues for appeal" before the case was submitted and in the record. *See Stonegate Fin.*, 2019 WL 3436616, at *5 (collecting cases in which "flexible approach" was applied). "To effectuate the purpose of the rule, the statement of points must 'designate with reasonable particularity the complaints to be pursued on appeal.'" *In re Marriage of McKay*, 393 S.W.3d 346, 349 (Tex. App.—Amarillo 2012, no pet.) (quoting *Munden v. Reed*, No. 05-01-01896-CV, 2003 WL 57751, at *2-3 (Tex. App.—Dallas Jan. 8, 2003, no pet.) (mem. op.)); *see CMM Grain Co. v. Ozgunduz*, 991 S.W.2d 437, 439 (Tex. App.—Fort Worth 1999, no pet.) (statement of points "need not be exact" but should describe nature of asserted error with "reasonable particularity"); *Kwik Wash Laundries, Inc. v. McIntyre*, 840 S.W.2d 739, 741 (Tex. App.—Austin 1992, no writ) (predecessor to rule 34.6(c) required party seeking to use partial record "to designate—with reasonable particularity, we think—the complaints to be pursued on appeal").

This Court has followed the supreme court's directive in *Bennett*, allowing for flexibility when an appellant has indicated the issues she seeks to appeal, *see Cancino v. Cancino*, No. 03-14-00115-CV, 2016 WL 234514, at *1 n.1 (Tex. App.—Austin Jan. 13, 2016, no pet.) (mem. op.),[4] but presuming in cases in which the appellant did not file a statement of the

---

[4] In *Cancino v. Cancino*, the record did not contain the appellant's request for a partial reporter's record. However, her brief set forth her issues, and appellee did not raise an issue

points or issues to be presented on appeal that the omitted portions of the record are relevant and support the trial court's judgment, *see Gordon v. Nickerson*, No. 03-18-00228-CV, 2019 WL 2147587, at *3 n.5 (Tex. App.—Austin May 17, 2019, pet. denied) (mem. op.) (quoting *Nelson v. Gulf Coast Cancer & Diagnostic Ctr.*, 529 S.W.3d 545, 548 (Tex. App.—Houston [14th Dist.] 2017, no pet.)); *Robertson v. Texas Dep't of Transp.*, No. 03-00-00167-CV, 2000 WL 1228025, at *2 (Tex. App.—Austin Aug. 31, 2000, no pet.) (mem. op.).[5]

In this case, the record does not include a statement of points or issues filed by Jocelyn with her request for a partial record, as required by rule 34.6(c).[6] Even if we view her brief as satisfying the statement-of-issues requirement of rule 34.6(c)(1), similar to our approach in *Cancino*, however, appellees did raise the issue in their brief, unlike *Cancino*, noting the incomplete record and asserting that the trial court could have based its order "on other parts of

about the incomplete record or request additional portions of the record. No. 03-14-00115-CV, 2016 WL 234514, at *1 n.1 (Tex. App.—Austin Jan. 13, 2016, no pet.) (mem. op.). We thus presumed that the appellate record was sufficient to consider the issue of whether the appellant had been properly served with citation. *Id.* at *1 & n.1. *But see Stonegate Fin. Corp. v. Broughton Maint. Ass'n, Inc.*, No. 02-18-00091-CV, 2019 WL 3436616, at *5 (Tex. App.—Fort Worth July 30, 2019, no pet.) (mem. op.) ("What all these cases [allowing for flexibility related to statement of issues] have in common is that the appellant provided a discrete statement of the issues for appeal (1) at some point in time before the appellee's brief was due, and certainly before the case was submitted, and (2) at some place in the record, even if not in the partial-record request itself.").

[5] Our sister courts have done the same. *See In re R.G.A.C.L.G.*, No. 05-19-00846-CV, 2020 WL 4281953, at *3 (Tex. App.—Dallas July 27, 2020, no pet.) (mem. op.); *In re J.A.T.*, 502 S.W.3d 834, 836 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *In re Tyler*, 408 S.W.3d 491, 494 (Tex. App.—El Paso 2013, no pet.); *In re Marriage of McKay*, 393 S.W.3d 346, 349-50 (Tex. App.—Amarillo 2012, no pet.); *In re A.M.K.*, No. 14-03-01308-CV, 2005 WL 3005636, at *1 (Tex. App.—Houston [14th Dist.] Nov. 10, 2005, pet. denied) (mem. op.).

[6] The record includes Jocelyn's amended notice of appeal, stating that she "desires to appeal all portions of the judgement with the exception of those regarding Reinhard Hutchinson." It also includes a communication from the court reporter to Jocelyn stating the cost of Jocelyn's "requested portions of the record that were made in your case on September the 10th, 2019."

the record not provided" by Jocelyn. *See* 2016 WL 234514, at *1 & n.1. In her reply brief, Jocelyn responded that she had "provided the necessary records to prove there was a pattern of family violence" by James and that she had tried to confer with appellees' attorney about the record but got no response.[7] On this record, we must presume that the omitted portions of the reporter's record from the final hearing support the trial court's order. *See In re R.G.A.C.L.G.*, No. 05-19-00846-CV, 2020 WL 4281953, at *3 (Tex. App.—Dallas July 27, 2020, no pet.) (mem. op.); *Stonegate Fin.*, 2019 WL 3436616, at *9-10; *Gordon*, 2019 WL 2147587, at *3 n.5; *Marriage of McKay*, 393 S.W.3d at 349-50. We overrule Jocelyn's first, second, and fourth issues, challenging the trial court's findings related to appellees' standing, W.L.'s best interest, managing versus possessory conservatorship, and visitation.

---

[7] Further, the partial reporter's record reflects that the parties disputed each other's accusations. For instance, although she admitted to using methamphetamine four or five times between March and September 2018, when she had custody of W.L., Jocelyn denied having a drug or alcohol problem and accused James of being an abusive alcoholic. James denied those accusations. Jocelyn testified that in an incident in early 2018, James attacked her and threatened to kill her if she did not sign over her rights to W.L., but James denied assaulting her and said that he only "prevented her from leaving her chair" during the "confrontation." The parties also disagreed about the effect Hutchinson, who is incarcerated and set to be released no later than November 2021, has on Jocelyn—James said he feared Jocelyn would re-engage in her unhealthy relationship with Hutchinson, while Jocelyn insisted that she had learned about codependency and now had the confidence not to fall back into a relationship with him, was no longer in contact with him, and had changed her phone number so he could not reach her. Jocelyn testified that James seemed "obsessed with [W.L.], being alone with her," and that W.L. had exhibited behavior that raised concerns about possible sexual abuse, while James testified that if Jocelyn believed her accusations of sexual assault, "something is wrong" because it is "absolutely not true." James testified that his "only interest is on [W.L.'s] safety and giving her an opportunity just to be a kid." He said W.L. has a safe and stable home and "doesn't have to worry about what's going to happen at night, if mom is going to be there or not be there when she wakes up." He said, "I don't think there's a chance that [W.L.] would be safe if she went back with" Jocelyn.

Even setting the partial-record issue aside, the trial court as fact-finder had the responsibility of resolving evidentiary conflicts and determining the weight and credibility to be given to witness testimony, and its decision on such matters is generally viewed as conclusive. *See Lilley v. Lilley*, 43 S.W.3d 703, 705-06 (Tex. App.—Austin 2001, no pet.).

As for Jocelyn's third issue, which complains that the trial court erroneously "turn[ed] the Rule 11 Agreement into a final judgement when consent had been revoked," the record does not reflect that the trial court's final order was based on or related to the parties' Rule 11 Agreement.[8] Instead, the final order appears to have been based entirely on the evidence presented by the parties at the final hearing. We thus overrule Jocelyn's third issue.

Finally, Jocelyn asserts that the trial court's final order violates her constitutional rights, pointing to caselaw holding that a parent's rights to the care and companionship of her child are fundamental and constitutionally protected. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Holick v. Smith*, 685 S.W. 2d 18, 20 (Tex. 1985). However, "[w]hile parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Jocelyn has not established that the trial court abused its discretion in how it assessed the witness testimony, resolved evidentiary or credibility disputes, and weighed W.L.'s best interest against Jocelyn's rights as her mother. *See Lilley v. Lilley*, 43 S.W.3d 703, 705 (Tex. App.—Austin 2001, no pet.). We overrule Jocelyn's fifth issue on appeal.

---

[8] The September 2018 temporary orders, giving appellees temporary sole managing conservatorship, were based on a Rule 11 Agreement filed after the police raid on Hutchinson's residence. *See* Tex. R. Civ. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.").

## CONCLUSION

We have overruled Jocelyn's issues on appeal. We therefore affirm the trial court's SAPCR order.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed: January 27, 2021